*New-London,*
July, 1845.

## Gould *against* Stanton and others.

## Stanton and others *against* Gould.

Gould
*v.*
Stanton.

Where it was found, on a bill in chancery, brought by *A* against *B* and others, for an account of the earnings of certain vessels, that *A's* interest therein was $\frac{15}{64}$th parts, and a balance in favour of the owners being ascertained, that proportion of it was decreed to *A*; after which *B* and others filed a cross-bill, alleging, that such finding was erroneous, *A's* interest being only $\frac{7}{64}$th parts; but no evidence was stated, which was not known, and could not be had, before; it was held, that no sufficient reason was shown for opening the decree to revise the finding.

Where the defendants had made certain advances for repairs and outfits of the vessels, which were allowed by the committee, without interest thereon: but it was found, that the defendants made no claim for the allowance of interest, and no reason was stated why it was not made; it was held, that the decree would not now be opened to allow interest.

Where the defendants had a small claim for return premium, which was not allowed by the committee; but it was not stated, that any claim was made for it before the committee, nor was the omission to allow it complained of in the remonstrance to their report; it was held, that such omission was not a sufficient ground of opening the decree.

Where *A*, claiming to be a part-owner with *B* and others of certain vessels, brought his bill against them for an account of the profits of those vessels in certain voyages, and, having established his title, obtained a decree in his favour for his proportion of such profits; after which *B* and others filed a cross-bill for an account and a set-off, and thereupon it was found, that the same vessels performed a subsequent voyage, without any action on the part of *A*, which resulted in a loss to the owners; that in this voyage the owners were the same, and owned in the same proportions, as in the former; and that *A* was insolvent; it was held, that *A* was liable for his share of the loss in the latter voyage, which, being ascertained, ought to be deducted from the sum decreed to him out of the profits of the former voyages.

In such case, *B* and others having effected insurance on the vessels " for whom it might concern," and one of the vessels being lost, they received from the insurers the amount of the insurance, and were thereby indemnified, *pro tanto*, for the advances made by them for repairs and outfits; but *A* disavowed any right in them to insure for him: it was held, that their claim against *A* for a set-off, was not thereby impugned.

After the opinion given by the court, in the case of *Gould v. Stanton & al.* 16 *Conn. R.* 12.—the defendants moved the superior court to stay execution, that they might have an opportunity to file a cross-bill for a set-off of accounts in a subsequent voyage of the same ship and brig. This motion was allowed; and the defendants then, by their cross-bill, alleged, that after the voyage accounted for, they continued

to act as agents for the ship *Charles Adams* and the brig *Uxor;* that in *June* 1836, they made sundry repairs of said ship, fitting her for a voyage to the *Southern* ocean, on which she sailed, and was burned and lost; that during the fitting out for this voyage and the prosecution thereof, the same persons were owners as during the former voyage; that the plaintiff, at the time of such repairs and outfits, was the owner of fifteen sixty-fourth parts of said ship, and continued to be, until her destruction; that the amount so expended by the defendants, after deducting the avails of some property saved, was 15,004 dollars, 21 cents, of which sum it is the duty of the plaintiff to pay fifteen sixty-fourth parts, *viz.* 3516 dollars, 60 cents, with interest; that the defendants, acting as agents for the owners of the brig *Uxor*, expended large sums of money in repairing her and fitting her for another voyage, which she accomplished, and returned to the port of *Stonington*, in *September* 1839, when they sold her, with her boats and furniture, for 2188 dollars, 44 cents; and that they are now ready and offer to account with the plaintiff for his share of the proceeds. The bill then averred, that the plaintiff resided out of the state, and was insolvent, having no visible property whatever; and prayed for a set-off.

By a supplemental bill, the defendants alleged, that *Charles E. Phelps* had a bill of sale of only seven sixty-fourth parts of the brig *Uxor;* that, in pursuance of an arrangement between him and the defendants, in 1833, eight sixty-fourth parts were sold at public auction, for 193 dollars, 75 cents; that this sale was ratified and confirmed, by the plaintiff; that said sum was allowed to him in account with the defendants, in full payment of said eight sixty-fourth parts; and that the plaintiff has since had no title to or interest in any more than seven sixty-fourth parts.

By another supplemental bill, filed in *May*, 1844, the defendants alleged, that in the settlement of accounts of the former voyage, they were not allowed interest on the moneys advanced for repairs and outfits; nor was there a deduction of 14 dollars, 23 cents, for return premium, to which they were entitled; and that these two mistakes were not discovered by them, until after the sitting of the court in *March*, 1844.

The plaintiff, in his answer, claimed, that the vessels in

question were insured, by which the defendants were indemnified; and that the brig had performed divers other voyages in the business of whaling and sealing, and from such voyages the defendants had received, on account of the share belonging to the plaintiff, an amount exceeding the sum claimed by them from him.

New-London,<br>July, 1845.<br><br>Gould<br>v.<br>Stanton.

The court appointed a committee to inquire into the facts set forth in the cross-bill and the supplemental bills of the defendants, and in the answer of the plaintiff thereto. From the report of this committee it appeared, that the defendants continued to act as agents for the owners and as ship's husbands of the ship *Charles Adams* and the brig *Uxor*, after their return in *June*, 1836, in the same manner as they previously had done; that the owners were the same, owning in the same proportions; that the vessels sailed on another voyage, in *September*, 1836, and in *May*, 1837, the ship and outfits were burned and lost at sea; that soon after the return of the brig, the defendants sold her, at public auction, for 1918 dollars, 66 cents, and the sale was ratified, by all the owners, except the plaintiff; that he is a bankrupt, living out of the state, and has never paid any part of the outfits; that the plaintiff's share in the brig was, as before found, fifteen sixty-fourth parts, but that no bill of sale to *Phelps* of more than seven sixty-fourths was shown to the committee, the other eight sixty-fourths having been, in *August*, 1832, charged in account against him; that in *September*, 1833, the defendants sold said eight sixty-fourths at auction, for the sum of 193 dollars, 75 cents, and received the money, and credited it in their account with *Phelps;* that said account was exhibited on the former hearing, and the agent and attorney of the plaintiff saw and examined the book which contained it; and that this sum made a part of the account allowed against the defendants, which has since been paid by them; but that the plaintiff never ratified the sale of said eight sixty-fourth parts, unless the facts above stated constitute such ratification.

The committee also found, that interest on the outfits for the former voyage, was not allowed to the defendants, in that trial; that the defendants made no claim therefor; nor was the return premium deducted. They also found, that when the ship was lost, she was under insurance, as expressed in the policy, "for whom it may concern;" that the insurance money

had been paid, and divided among the persons whom the defendants recognized as the sole owners, at whose request and for whose benefit the insurance was made, [naming them,] not including the plaintiff; and that said outfits were furnished at the sole request and for the sole benefit of those persons to whom the insurance money was paid.

On the former trials for the settlement of former voyages, the counsel for the plaintiff objected to the charges of the defendants for cash paid for insurance, as they had no authority to effect it; and such charges were therefore rejected. The defendants have now a suit pending against the plaintiff, to recover his share of the expenses of fitting out and furnishing said ship for her last voyage.

The case was reserved for the advice of this court as to what decree ought to be passed.

*Rockwell* and *Foster*, for the plaintiffs in the cross-bill, (original defendants,) contended, 1. That they were entitled to the set-off claimed in their cross-bill, *viz.* $\frac{15}{64}$ths of the sum advanced for the repairs and outfits of the ship *Charles Adams* and the brig *Uxor* for the last voyage, with interest. The decision already made, that the defendants must account to the plaintiff for the proceeds of the voyage, necessarily implies a liability on his part for outfits and repairs. This was the principle assumed by his counsel, on the former trial; and it was adopted by the court, in express terms. 16 *Conn. R.* 22, 3. 26.

2. That there was an error in the finding of the former committee in this suit, that $\frac{15}{64}$ths of the brig belonged to the plaintiff; $\frac{8}{64}$ths having been sold, and the avails, *viz.* 193 dollars, 75 cents, having been received by the plaintiff. By the act of receiving such avails, the plaintiff is estopped to deny the sale. *The Queen* v. *Greene*, 2 *Adol. & El. N. S.* 460. (42 *E. C. L.* 760.) *Pickard* v. *Sears* & al. 6 *Adol. & El.* 469. (33 *E. C. L.* 115.) *Watson's* exrs. v. *McLaren*, 19 *Wend.* 557. *Foster* v. *Newland*, 21 *Wend.* 94. *Hall* & ux. v. *White*, 3 *Car. & Pa.* 136. (14 *E. C. L.* 242.) *Presbyterian Congregation of Salem* v. *Williams*, 9 *Wend.* 147. *De Metton* v. *De Mello*, 12 *East*, 234. S. C. 2 *Campb.* 420. *Gregg* v. *Wells*, 10 *Adol. & El.* 90. (37 *E. C. L.* 54.)

3. That the claim of the defendants for advances made on the former voyages being allowed as just and right, the omis-

sion of interest thereon was an error, which the court would now correct.

New-London, July, 1845.

Gould.
v.
Stanton.

4. That the non-allowance of the defendants' claim for return premium, was also an error requiring correction.

*Strong* and *Baldwin*, for the plaintiff, contended, That the decree in favour of the plaintiff was properly passed on the report of the committee on the original bill; and that the cross-bill should be dismissed, with costs. In support of this proposition, they insisted, 1. That the only allegation which could be claimed to justify the filing of the cross-bill, *viz.* that the plaintiff was owner, at the time of the outfits, is *negatived* by the finding; and every other fact regarding this matter, alleged in the bill and passed upon by the committee, was before known by the defendants, or within their means of knowledge, and should have been presented at an earlier period. Besides, the defendants having denied the title of the plaintiff, and acted in opposition to it, and recognized other persons as owners, are now estopped to claim that the plaintiff was owner.

2. That the finding of the committee shows, that there is no equity in the defence set up by the cross-bill. The outfits created no *indebtedness* against either *Manice* or *Gould*. Not, in the first place, in favour of those who had paid for them to *Stanton* and *Pendleton*, and who caused them to be furnished under a claim of ownership, and not as agents of *Manice*, whom they had no power to bind. Secondly, not to *Stanton* and *Pendleton*; for they did not profess to act as agents for *Manice*, but for those who claimed in hostility to his title. Thirdly, *Stanton* and *Pendleton* have been fully repaid, by those for whom they acted. Fourthly, these very shares were included in the policies of insurance—were intended, by the insurers, for whom it might concern; and a full indemnity has been paid on them, so that no one has sustained any loss.

3. That the decree passed on the original bill will not be opened to give the defendants an opportunity for a rehearing before the committee, in regard to claims in support of which they have no evidence, which they had not, or might not have had, on the former hearing.

New-London, July, 1845.

Gould
v.
Stanton.

WILLIAMS, Ch. J. This court having, on the original bill, settled the question which was disputed between these parties, as to the title to $\frac{15}{64}$ths of these vessels, and drawn what they believe the legal inference therefrom, resulting in a large balance due to the plaintiff, upon the voyage then in dispute, these defendants, instead of pursuing the bill which was then pending for an account of the next voyage, moved the superior court for a suspension of execution, as *Gould* was a bankrupt, and out of the state, that it might be ascertained what was due to them on this voyage, that such balance might be set off in satisfaction of the plaintiff's judgment against them. Execution was stayed accordingly, and this cross-bill filed; a hearing was had upon the merits; and on report of a committee, the questions arising thereon were reserved for a hearing in this court; and now an objection is made, that no such cross-bill should have been allowed; and authorities have been cited to this effect. It is not proposed, in this stage of the case, to go into the examination of that question. We think, if that objection could have prevailed, it should have been made in an earlier stage of the proceeding, and exception taken.

Having gone to trial on the facts, and the case being brought to this court for their decision upon these facts, we do not feel bound to examine the formal proceedings before the superior court. We are not satisfied that any error has intervened, as claimed. But if it has, we do not think it is to be settled upon this report.

There are, however, objections made to some part of this claim, that must be considered here; such as that an attempt is here made to review the proceedings in the former trial. The claim that the plaintiff was not the owner of $\frac{15}{64}$ths of the vessels, is one which was tried and decided in the former case; and that *Charles E. Phelps* was credited with the sum of 193 dollars, 75 cents, on account of the brig *Uxor*, was a fact appearing on the books of the defendants, as it now does. It is not shown, that there is a single item of evidence now, that there was not before; nor is it claimed, that they did not know all these facts, as well when they filed their remonstrance against the report, as they now do. To open these questions, then, would be to revise that decision upon the naked allegation that the court had come to a wrong result.

If this is a sufficient reason for opening anew a decree of the superior court, there would be no end to litigation.

The claim for interest not allowed upon advances made, stands upon similar grounds. The committee found, that no such claim was made before, by the defendants; and of course, no interest was allowed. Here then is a demand, which the party voluntarily, or negligently omitted to make, when their cause was on trial, and another, which, if made, was overruled; and this court are asked, without any reason given, except the negligence or omission of the party applying, to open this subject again.

The defendants do not stand upon any better ground than if they had formally petitioned for a new trial for new discovered evidence. Indeed, this cross-bill is a petition for a new trial, on this part of the case; and in such a petition, it is a well settled rule, that the party must not only show he has discovered new and material evidence, but he must also show, that he could not before have procured it, by the use of due diligence.

Here, it is not claimed, there is any new discovered evidence, so far as regards the first claim; but it is clearly shown, that the evidence was in their own hands, subject to their own controul, and even depended upon their own books.

As to the interest, the case is still stronger; for the committee find, that the defendants made no claim for its allowance; of course, they could not expect it would be allowed. No reason is stated, why this was omitted; of course, we see no ground upon which the court can stand in granting the relief sought in this part of the case, unless they reverse the maxim, *Vigilantibus, non dormientibus, &c.*

How it happened that the return premium of 14 dollars, 23 cents, was not allowed, does not appear; nor is it stated, by the defendants, that any claim was made for it, before the committee. It doubtless should have been allowed; but as the defendants made no claim in their remonstrance on this account, we do not think we ought to disturb the former decree. No reason is shown why it was overlooked in the remonstrance; and it is better that a small loss should be sustained, by these defendants, than that such a door to unlimited litigation should be opened. As it regards these

HARVARD LAW LIBRARY

*New-London,*
*July, 1845.*

Gould
*v.*
Stanton.

points, we do not think there are sufficient grounds shown for the interposition of the court.

There is, however, another part of the case, in which we have come to a different result.

The defendants have been called upon, by the plaintiff, to account for a voyage of these vessels, which proved to be a fortunate voyage, upon the ground that the plaintiff was an owner; and they now call upon the plaintiff, as owner, to assist in meeting the losses of the next succeeding voyage. And it certainly is difficult to understand, why if the plaintiff's rights remain as they were in the former voyage, his duties should not remain the same.

The plaintiff says, however, that he is charged as owner, and the committee have found he was not owner, and so the foundation of the claim is taken away. The committee do not find *Charles Gould* was not owner, unless it is to be inferred from the fact that they find that the owners of the vessels were the same, and in the same proportions, as stated in the bill of *Gould* now pending; so that if *Gould* was, in the former case, owner, it would seem that he now remaines owner. The finding of the committee is so far in the language of the defendants' bill, in which they charge *Gould* as owner.

He claimed as assignee of *Manice;* and the important question before was, whether *Manice* had good title. That was determined in his favour, and that *Gould* was his assignee. If therefore the parties remained in the same situation as they were on the former voyage, the allegation in the bill is substantially found to be true, by the committee; and the question fairly arises, whether the plaintiff, standing in the same relation to these vessels as he did in the former voyage, has the same rights and is subject to the same duties as in that.

If, as assignee of *Manice*, he could recover for the profits of a former voyage, he must, in the same character, be responsible, where *Manice* himself would be, in the succeeding voyage. If while representing *Manice*, a court of chancery treated him as owner, we see not why they should not continue so to treat him, while acting in the same capacity.

We see, therefore, no obstacle in coming to the real question between these parties.

The court were called upon, in the former case, to decide as to the title to these vessels, and finding that, to adjust the

accounts of the only voyage disclosed to them. Having done
this, the defendants claim, that an account shall be taken of a subsequent voyage, in which they acted in the same relation
to the plaintiff as in this. In that case, it was settled, that the plaintiff had the rights of an owner, because he had the responsibilities of an owner; that a part owner, unless he took the steps pointed out by law, must submit to be governed by the voice of the major owners, and must bear his proportion of the expense of repairs, whether he was satisfied with the voyage or not. The act of the agents, it is said, is the act of the owners; the repairs of the vessel are made for them; the supplies are supplies for them; and the proceeds are to be divided among them. The vessel sails theirs, so far as they are owners; and they are liable for all the consequences which may flow to an owner. *Gould* v. *Stanton*, 16 *Conn. R.* 12. 24. 26. These were principles contended for by the plaintiff, on that trial, and sanctioned by this court. They were principles, not adopted for that voyage, nor for that case, merely; but they were principles of justice, pervading the commercial world; and we did not expect to be called upon so soon, to reverse them. We know indeed, that the plaintiff says, he elected only to be treated as owner for that voyage. He did indeed elect to be treated as owner for that voyage, which was profitable, and now elects not to be treated as owner for that which was unprofitable. We trust there is no custom of merchants, and we know of no rule of law, which will permit this. After the termination of the first voyage, the plaintiff, if he had chosen, might have gone to the admiralty, and required a stipulation, by which he would have been secured from the risk of another voyage. But he lies by, with folded hands, claiming to be owner, if the voyage is profitable, and not to be owner, if it is unprofitable. This is a game, which will not receive the countenance of this court. Had this voyage, like the former, proved prosperous, the plaintiff must have been entitled to a share of the profits; and why? Because, as was then contended, he was subject to the responsibilities and hazards of the voyage.

But it is said, on the part of the plaintiff, that the defendants, having denied the title of the plaintiff, and acted in opposition to it, and recognized others as the owners, can not now claim the plaintiff to be owner; and it is compared to the case of a

trespasser, who, though he may be treated by the owner of the property taken as his agent, has no right to treat the owner as his bailee. This argument might have been urged, with great force, in an earlier stage of this cause; perhaps it might then have prevailed. But after the plaintiff has come into court, and established his title, it would seem, that as he has shown he had the rights of owner, he has also shown, that he was subject to the duties of owner. If he claims that the defendants are estopped from treating him as owner, because they have denied his title, surely he must be estopped from saying he is not owner, when he has not only claimed it, but established the fact, by a decree of this court. The act of one party surely ought not to be stronger against him, than the act of the other party, confirmed by a decree of court, should be against *him*. If, however, they are equally balanced, then we look at the fact as it is, and find the plaintiff with the rights of an owner of this property; and then we are to ask what are the duties of an owner? These are clearly defined, by the law of the last case.

Suppose it was the case of an ordinary partnership, instead of that kind of partnership which exists between ship owners. *A* and *B* are known partners. *C* also claims to be a partner. This is denied by *A* and *B*. A trial is had; and the fact of *C's* right in that partnership is established. Will *C*, therefore, have the right to bring down his partnership to the exact time when the concern begins to become unprofitable? Or must he continue a partner, until he can show a dissolution, in some legal mode? Such we consider the case of the plaintiff. He has shown himself as having the rights of a part-owner, at a given time. Having done this, he remains subject to the duties of that relation, until he can show they are legally dissolved.

It is said, the defendants were appointed ship's husbands or agents, for the former voyage, but not for the second. They were appointed for both voyages, by a major vote of the ship owners. Their powers and duties, therefore, are the same, in the one case, as the others. It is true, they did suppose they were acting for other persons, and not the plaintiff; but the plaintiff having established his legal title, the law decides the question for whom they are acting; and the settlement of that question would seem to conclude the parties.

*New-London,*
July, 1845.

Gould
*v.*
Stanton.

The plaintiff, then, having proved he was owner, and entitled to the rights and privileges of an owner, must submit to the burthens of ownership. Had he proved he was merely owner for the voyage, his obligations might have terminated with the voyage. But having shown, by the evidence before us, that *Manice* had all the title of an original owner of $\frac{15}{64}$ths of this ship and brig, and that he is assignee of *Manice*, we think it follows, that he must assume the same liabilities as those whose substitute he is; and as he has not shown, that an act has been done to change his situation since the former voyage, he must be liable to the misfortunes of the latter. He took the same part in this voyage as the former: in neither was he active. The defendants were appointed by the same authority, in each voyage, and made the advances with the same intent. But as this intent could not vary the rights of the plaintiff in the former voyage, it cannot affect his obligations in the latter. The privileges and the obligations of the plaintiff depend, not upon the intent of the defendants, but on the title of the plaintiff. We have no doubt, therefore, that the plaintiff is responsible for the outfits and repairs of these vessels.

But it is said, that these defendants have received compensation for their advances from the insurance which was made for the benefit of " those whom it might concern ;" and if the same rule of law existed as to the right of the ship's husband to make insurance for the part-owners as exists with respect to his making advances for repairs and outfits, we should think this answer conclusive. But so it is, the plaintiff has satisfied the court, that this is an obligation the ship's husband cannot impose upon the part-owner. He may insure or not, at his own election; and on the former trial, this plaintiff expressly disavowed any right in these defendants to insure for him. We are not able to discover by what rule of law or justice he can claim the benefit of insurance, in one case, while he disavows the right to insure, in the other. He has given the defendants no new authority; and the law has not invested them with any new power.

But it is said, the insurance is " for whom it may concern." But how did it concern the plaintiff? It was not intended for him, by the defendants. It is clear he did not consider himself as concerned, when he rejected the former insurance. By

*New-London,*
*July, 1845.*

Gould
*v.*
Stanton.

what process, then, he has become entitled to its benefits, we are not able to understand. It cannot be because the defendants received the money for him, or because they have retained it in their own hands. So far from that, they have received it under the supposition that it belonged to others, and have actually paid it over to others. Their case resembles that of an agent, who, having received money for his principal, has honestly paid it over. He shall not be liable for it, although the principal may have no right to retain it. When, then, it is asked, whether the defendants shall retain the insurance money, the answer is easy. They have not got it; they have paid it over to those, who, they supposed, had a right to it.

If it be asked, shall those persons, who, it now appears, had no interest in the vessel and outfits, retain this money? Whether the insurance company can recover it back; or whether these persons, who made it, not as a mere gaming contract, but under the belief that they had a real interest, can retain it; is not a question now before the court; and as the interest of persons not parties to the suit is concerned, it would not be proper to intimate an opinion. It is enough to say, that this plaintiff, with all the rights he ever had to this property, having disclaimed the right of the defendants to make insurance for him, can have no claim to the money received under this insurance. And so is the superior court advised.

In this opinion the other Judges concurred, except CHURCH, J., who was not present.